**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DAVIS and NICOLETTE LYNN DAVIS | : CIVIL ACTION |
| vs. | : NO. 05-CV-4061 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, NEW CENTURY MORTGAGE CORPORATION and NOVASTAR HOME MORTGAGE, INC. | : |

**MEMORANDUM AND ORDER**

---

**JOYNER, J.** **November 7, 2007**

We write now to address Defendant Deutsche Bank National Trust Company's ("Deutsche Bank) Motion for Summary Judgment. For the reasons set forth below, the motion shall be granted.[1]

**Factual Background**

This civil action arises out of John and Nicolette Davis' decision to re-finance the mortgage on their home in Media, Pennsylvania in January, 2004. At that time, Mr. and Mrs. Davis had an existing mortgage with Ameriquest Mortgage Company. In response to a letter which she had received in the mail, Mrs.

[1] Although Defendant New Century Mortgage Corp. also filed a motion for summary judgment on April 3, 2006, it has since filed for bankruptcy protection and has thus taken the position that the Court need not rule on its motion. While Nicolette Davis also filed for bankruptcy protection on April 28, 2006, it appears that her case is nearly complete in that the plan in her case was confirmed in May, 2007. In any event, as the parties have all agreed that this Court may now rule on the instant motion, we shall proceed to do so.

Davis contacted Defendant Novastar Home Mortgage, a mortgage broker, and was advised that Novastar could help her re-finance her loan to get a lower payment and/or better interest rate than what she and her husband then had with Ameriquest. (Dep. of Nicolette Davis, February 28, 2006, at pp. 14-16; Pl's Amended Complaint, ¶7). After several meetings at their home with a Novastar representative, the plaintiffs settled on a variable rate mortgage through New Century Mortgage Corporation on January 20, 2004.[2]

Approximately one year later, Plaintiffs defaulted on their loan obligations and Deutsche Bank instituted foreclosure proceedings in the Court of Common Pleas of Delaware County. (Pl's Complaint, Exhibit "A"; Dep. of John Davis, Feb. 28, 2006, at p. 33). At that time, Plaintiffs retained their present counsel, David Scholl, Esquire who then made a claim for rescission of the loan on the grounds that Defendants had violated various provisions of the Federal Truth in Lending Act, 15 U.S.C. §1601, *et. seq.* ("TILA"). Deutsche Bank apparently never responded to this letter demand for rescission and Plaintiffs instituted this lawsuit for rescission of the mortgage and other remedies under the TILA in July, 2005. By way of the motion which is now before us, Deutsche Bank moves for the entry

[2] At some point which does not appear of record, New Century assigned the Davis' mortgage to Defendant Deutsche Bank. See, *e.g.*, Pl's Amended Complaint, ¶s4, 16.

of judgment in its favor as a matter of law on the grounds that the record evidence establishes that Plaintiffs received all of the notices and information to which they are entitled and that all of the fees which they were charged at the closing of their loan were properly disclosed and were lawful under the TILA.

**Summary Judgment Standards**

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. See, Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

**Discussion**

By their Amended Complaint, Plaintiffs seek both rescission and damages for the alleged non-disclosure of the terms of their loan prior to and at settlement, and for the purportedly improper disclosure of the finance charges, fees, and annual percentage rate. In support of their claims for relief, Plaintiffs rely upon various provisions of the Truth in Lending Act, specifically 15 U.S.C. §§1635(b), 1638(a) and 1640(a)(2)(A)(i) and (a)(3).

The right of rescission generally arises under TILA Section 1635 and specifically includes those "consumer credit transactions ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. §1635(a). Under this subsection, creditors are required to disclose these rescission rights to their obligors and to inform them that the right to rescind is open for three business days following the consummation of the transaction or delivery of the information regarding such right to rescind, rescission forms and a statement containing the other material TILA disclosures, whichever is later. Should a creditor fail to provide the required notices and disclosures, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first..." 15 U.S.C. §1635(f). <u>See Also</u>, 12

C.F.R. §226.23(a)(3).

In seeking rescission and monetary relief from Deutsche Bank,[3] Plaintiffs contend that they did not receive the required pre-settlement disclosures of the terms of their variable rate mortgage or accurate disclosures of the finance charges. Specifically, Plaintiffs charge that the yield spread premium, at least $250 of the settlement or closing fee, courier fee, tax service fee and title insurance charge were all not included on the disclosure statement. In addition to not being included in the finance charge as noted on the disclosure statement, Plaintiffs further contend that the appraisal charge was excessive and that they were erroneously charged the "basic" rate for title insurance when they should have been charged the "re-issue" rate since this was a refinancing transaction which took place within ten years from Plaintiffs' having obtained their earlier loan from Ameriquest.

*A. Receipt of Disclosures*

Plaintiffs here first allege that they did not "receive the requisite pre-settlement disclosures of the terms of their

[3] Under 15 U.S.C. §1641(a), actions for violations of the TILA may be maintained against any assignee of the original creditor so long as the violation for which suit has been instituted was "apparent from the face of the disclosure statement..." In any event, Deutsche Bank is apparently not challenging its joinder as a defendant in this action.

variable rate mortgage, in violation of 12 C.F.R. §226.19."[4]

---

[4]   Under Regulation "Z" codified in part at 12 C.F.R. §226.19(b),

"If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier:

(1) The booklet titled Consumer Handbook on Adjustable Rate Mortgages published by the Board and the Federal Home Loan Bank Board, or a suitable substitute.

(2) A loan program disclosure for each variable-rate program in which the consumer expresses an interest.  The following disclosures, as applicable, shall be provided:

(I) The fact that the interest rate, payment or term of the loan can change.

(ii) The index or formula used in making adjustments, and a source of information about the index or formula.

(iii) An explanation of how the interest rate and payment will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin.

(iv) A statement that the consumer should ask about the current margin value and current interest rate.

(v) The fact that the interest rate will be discounted, and a statement that the consumer should ask about the amount of the interest rate discount.

(vi) The frequency of interest rate and payment changes.

(vii) Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.

(viii) At the option of the creditor, either of the following:

(A) A historical example, based on a $10,000 loan amount, illustrating how payments and the loan balance would have been affected by interest rate changes implemented according to the terms of the loan program disclosure...

(B) The maximum interest rate and payment for $10,000 loan originated at the initial interest rate ... in effect as of an identified month and year for the loan program disclosure assuming the maximum periodic increases in rates and payments under the program; and

(Pl's Amended Complaint, ¶19).

The record here belies this assertion, however. Indeed, at their depositions, both Mr. and Mrs. Davis testified that the Novastar representative explained that they were getting an adjustable rate mortgage from New Century Mortgage Corporation which could rise or fall compared to what the economy does. (Dep. of John Davis, 2/28/06, Exhibit "B" to Deutsche Bank's Motion for Summary Judgment, 27; Dep. of Nicolette Davis, 2/28/06, Exhibit "C" to Deutsche Bank's Motion for Summary Judgment, 14-15, 22-23). Both plaintiffs further testified that they signed the Federal Truth in Lending Disclosure Statement and the Libor 6 month ARM Loan Program Disclosure thereby acknowledging that they had received copies of the disclosures

---

the initial interest rate and payment for the loan and a statement that the periodic payment may increase or decrease substantially depending on changes in the rate.

(ix) An explanation of how the consumer may calculate the payments for the loan amount to be borrowed based on either:

(A) The most recent payment shown in the historical example in paragraph (b)(2)(viii)(A) of this section; or

(B) The initial interest rate used to calculate the maximum interest rate and payment in paragraph (b)(2)(viii)(B) of this section.

(x) The fact that the loan program contains a demand feature.

(xi) The type of information that will be provided in notices of adjustments and the timing of such notices.

(xii) A statement that disclosure forms are available for the creditor's other variable-rate loan programs.

and the Consumer Handbook on Adjustable Rate Mortgages.  In addition, while they do not specifically recall receiving it, Plaintiffs do not dispute that they received a letter from New Century dated December 22, 2003, enclosing the Loan Information Letter, Truth in Lending Disclosure Statement, Definition of Truth-in-Lending Terms, Good Faith Estimate of Closing Costs, Schedule A to that Good Faith Estimate, the Servicing Disclosure, Settlement Cost Booklet, Fair Lending Disclosure, Fair Lending Notices pursuant to the ECOA (Equal Credit Opportunity Act), Choice of Insurance Notice, Application Disclosure, New Century Mortgage Privacy Policy, the Consumer Handbook on Adjustable Rate Mortgages and the Adjustable Rate Mortgage Loan Program Disclosure.  (Exhibit "B," 26-27, 48-49, Under §226.19(b), Exhibit "C," 23-25; Exhibits "D"-"F").

As we discussed in our decision in <u>Strang v. Wells Fargo Bank</u>, Civ. A. No. 04-2865, 2005 U.S. Dist. LEXIS 14135 at *3 (E.D.Pa. July 13, 2005) pursuant to 15 U.S.C. §1635(c), the plaintiffs' execution of the Federal Truth in Lending Disclosure Statement creates a rebuttable presumption that the proper disclosure(s) was made.  <u>See Also</u>, <u>Oscar v. Bank One, N.A.</u>, Civ. A. No. 05-5928, 2006 U.S. Dist. LEXIS 6410 at *9 (E.D.Pa. Feb. 17, 2006)(same).  In as much as Plaintiffs here proffer no evidence to rebut this presumption, we find that summary judgment is properly entered in favor of the moving defendant on

Plaintiffs' claims that the TILA-mandated disclosures were not made.

*B. Accuracy of the Finance Charge*

Plaintiffs next assert that they

> "did not receive an accurate disclosure of the 'Finance Charge' in the transaction in violation of 15 U.S.C. §1638(a), as the Finance Charge as disclosed omits the many of the (sic) charges and excessive charges referenced in paragraph 10 supra which renders the disclosure of the Finance Charges and Annual Percentage Rate of the Finance Charge erroneous."

(Pl's Amended Complaint, ¶20).[5]

---

[5] 15 U.S.C. §1638(a), requires that the following be disclosed to consumers:

> (1) the identity of the creditor required to make disclosure, (2) the amount financed, (3) the finance charge, (4) the finance charge expressed as an annual percentage rate, (5) the sum of the amount financed and the finance charge, which together is to be termed the "total of payments," (6) the number, amount, due dates or period of payments scheduled to repay the total of payments, (7) the total sale price, which is to include the total of the cash price of the property, additional charges and the finance charge, (8) descriptive explanations of the terms "amount financed," "finance charge," "annual percentage rate," "total of payments," and "total sale price," which shall include reference to the amount of the downpayment, (9) where the credit is secured, a statement that a security interest has been taken and in what property, (10) any dollar charge or percentage amount which may be imposed for late payment, (11) a statement whether or not the consumer is entitled to a rebate of any finance charge upon refinancing or prepayment in full and a statement indicating whether or not a penalty will be imposed in those same circumstances, (12) a statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, right to accelerate the maturity of the debt and prepayment rebates and penalties, (13) in residential mortgage transactions, a statement indicating whether a subsequent purchaser or assignee may assume the debt on the original terms, (14) in the case of a variable rate residential mortgage a statement that the periodic payments may increase or decrease substantially and the maximum interest rate and payment for a $10,000 loan, and (15) in case of a consumer credit transaction that is secured by the consumer's principal dwelling where the extension of credit may exceed the fair market value of the dwelling, a clear and conspicuous statement that the interest on the portion of the credit that is greater than the fair market value of the property is not tax deductible for federal income tax purposes and that the consumer should consult a tax advisor for further information on deductibility of interest and charges.

It has been recognized that the Congressional purpose of TILA was to inform the consumer of the true cost of credit and that to accomplish this purpose, the TILA and its implementing Regulation Z require lenders to disclose to consumers certain material terms clearly and conspicuously. In re Escher, 369 B.R. 862, 870 (Bankr. E.D.Pa. 2007) citing Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246, 248 (3d Cir. 1980) and Nichols v. Mid-Penn Consumer Discount Co., 1989 U.S. Dist. LEXIS 4796, 1989 WL 46682 at *4 (E.D. Pa. 1989); 15 U.S.C. §§1601(a), 1638(a), 1638(b)(1); 12 C.F.R. §226.17(a)(1). At paragraphs 10 and 11, Plaintiffs take exception to the appraisal charge of $500, the yield spread premium portion of Novastar's compensation of $1290, "at least $250 of the settlement or closing fee," the courier fee and tax service fee paid to Express Financial Services, and "any portion of the title insurance charge of $1003.75."

"Finance charge" is defined by both the TILA and Regulation Z. Under the TILA definition, the finance charge is said to be "...the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit..." 15 U.S.C. §1605(a). "Finance charge" is similarly defined under Regulation "Z" as "...the cost of consumer credit as a dollar amount." 12 C.F.R. §226.4(a). As previously noted, the finance charge is one of the "material disclosure" items

under Regulation Z and, if it is materially inaccurate, the rescission period is extended until three years after consummation. Oscar, 2006 U.S. Dist. LEXIS at *13 citing 12 C.F.R. §226.23 n. 48. Again, Regulation Z also provides that the finance charge is considered to be accurate "if the disclosed finance charge: (i) is understated by no more than ½ of 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed. Id., citing 12 C.F.R. §226.23(g). Furthermore, under both the statute and the regulation, the following are not to be included in the computation of the finance charge in residential mortgage transactions/transactions secured by real property, provided they are bona fide and reasonable in amount:

- Fees or premiums for title examination abstract of title, title insurance, property survey and similar purposes.

- Fees for preparation of loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.

- Notary and credit report fees.

- Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.

- Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

15 U.S.C. §1605(e); 12 C.F.R. §226.4(c)(7).

1. *Title Insurance*

Courts generally assess the reasonableness of a title

insurance premium "through comparison of the disputed charges with the prevailing rates of the industry in the locality." Jones v. Aames Funding Corporation, Civ. A. No. 04-CV-4799, 2006 U.S. Dist. LEXIS 11119 at *15 (E.D.Pa. March 8, 2006), quoting Johnson v. The Know Financial group, 2004 U.S. Dist. LEXIS 9916, 2004 WL 1179335 at *6 n.5 (E.D.Pa. 2004). Courts often use the Manual of the Title Insurance Rating Bureau of Pennsylvania (hereafter "TIRBOP Manual") as the gauge for determining the reasonableness of title insurance rates in Pennsylvania. Id.

In support of their argument that they were charged an excessive rate for title insurance, Mr. and Mrs. Davis assert that they should not have been charged the "basic" rate because they were entitled to the "reissue rate." According to Section 5.3 of the TIRBOP Manual,

> a purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the earlier policy is produced notwithstanding the amount of coverage provided by the prior policy...

And, under Section 5.6,

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate...

In this case, the plaintiffs claim and have annexed an affidavit from their proposed expert witness which attests that

the "basic" filed rate in effect at the time of the January 20, 2004 closing, for $129,000 of coverage was $1,003.75, which is of course, what the plaintiffs were charged.  The effective "re-issue" rate for that amount at that time was 90% of the basic rate or $903.38. (Affidavit of William C. Hart, Esquire in Support of Plaintiff's Memorandum of Law in Opposition to Deutsche Bank's Motion for Summary Judgment at ¶20).  Given that we have no evidence before us on the issue of whether or not the plaintiffs were entitled to be charged the re-issue rate as we have no information concerning their earlier loan other than that it was made with Ameriquest in 2000, we would find that the amount which Plaintiffs' paid for title insurance was reasonable.[6]  Furthermore, as is clear from the Good Faith Estimate--Itemization of Prepaid Financed Charges which Plaintiffs received on December 22, 2003 and January 15, 2004, the title insurance charge was estimated to be $1,500.00.  Thus, under Regulation Z, 12 C.F.R. §226.23(g), the amount estimated is

---

[6]  Specifically, we do not know whether the Ameriquest loan was made with only Mr. and Mrs. Davis or whether there may have been another obligor involved, nor do we know whether or not that loan may have been a re-financing or whether it may have been made in response to a mortgage foreclosure. As all of this information may be relevant to assessing the applicability of the re-issue rate, we simply cannot make the finding which plaintiffs seek, *to wit*, that they are entitled to the re-issue rate merely because the re-financing with New Century occurred within the three-year time frame provided under the TIRBOP Manual.  In so holding, we are mindful that, "[a]t the very least, if a borrower contends that a lender failed to obtain the lowest possible title insurance rate permitted by law, she has an affirmative burden to demonstrate that the lender knew or should have known of the facts justifying that lower rate."  In re Escher, 369 B.R. at 877, citing *inter alia*, In re Fields v. Option One Mortgage Corp., 2006 U.S. Dist. LEXIS 52934, 2006 WL 2191342 at 31-32(E.D.Pa. 2006); Jones v. Aames v. Funding Corp. 2006 U.S. Dist. LEXIS 11119, 2006 WL 2845689 *5-7 (E.D.Pa. 2006).

greater than the amount actually charged and it thus falls within the 1% tolerance level for accuracy.

*2. Yield Spread Premium*

Plaintiffs also argue that the yield spread premium paid to Novastar was not properly disclosed as a finance charge. Although it is true that both TILA and Regulation Z define "finance charge" to include mortgage broker fees paid by the consumer, a "yield spread premium" is defined as:

> a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the yield spread (*i.e.*, the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan.

In re Escher, 369 B.R. at 870-871, citing, *inter alia*, 15 U.S.C. §1605(a)(6); 12 C.F.R. §226.4(a)(3), (9); Oscar v. Bank One, 2006 U.S. Dist. LEXIS at *5. A yield spread premium may be included in the total TILA finance charge either as a part of the annual percentage rate (APR) or as part of the prepaid finance charges which serve to lessen the total amount financed. Stump v. WMC Mortgage Corp., Civ. A. No. 02-326, 2005 U.S. Dist. LEXIS 4304 at *12 (E.D.Pa. March 16, 2005). Here, the record reflects that it was the *lender* - not the plaintiffs, who paid the sum of $1,290 to Novastar, the mortgage broker outside of the closing. Thus, as was the case in Stump, it appears that the cost of the yield spread premium was not imposed at settlement but was instead paid

out as interest over the course of the 11.435% mortgage and was thus already included in the $311,301.10 finance charge as a higher interest rate. Accordingly, it should not be "double counted" by being added to the Itemized prepaid finance charges. Stump, 2005 U.S. Dist. LEXIS at *12-*13. See Also, In re Escher, 369 B.R. at 873-874. For these reasons and because it further appears that the yield spread premium was disclosed to the plaintiffs at least by January 15, 2004, we must reject the plaintiffs' claim that the yield spread premium was not accurately disclosed to them as a finance charge.

*3. Property Appraisal Fee*

Plaintiffs next take exception to the $500 property appraisal charge. On this, we must agree.

To again reiterate, to be excludable from the Finance Charge under Section 226.4(c)(7) of Regulation Z, real-estate related fees, including property appraisal fees or fees for inspections to assess the value or condition of the property and to inspect for pest infestation or make a flood hazard determination, must be bona fide and reasonable in amount. The record in this matter demonstrates that on the good faith estimate/itemization of prepaid finance charge sheets which Plaintiffs were provided prior to going to settlement, the property appraisal fee was estimated at $300.00. However, the settlement statement reflects that Mr. and Mrs. Davis were actually charged an appraisal fee of

$500. According to Plaintiff's proposed expert witness, the reasonable fee for performing an appraisal of a home such as the plaintiffs in connection with a loan such as the one which they re-financed is between $200 and $350. (Affidavit of Ameer Saleen, at ¶7). Moving Defendant, on the other hand, has proffered absolutely no evidence to refute this expert opinion or to demonstrate the reasonableness of the appraisal fee charged. Accordingly, we find that the appraisal fee was not accurately or properly disclosed in accordance with both TILA and Regulation Z.

*4. Settlement/Closing, Courier and Tax Service Fees*

As noted, Plaintiffs' final challenge is that "at least $250 of the settlement or closing fee," the courier fee and tax service fee paid to Express Financial Services were not properly/accurately disclosed.

We are somewhat perplexed by Plaintiffs' argument. In comparing the Good Faith Estimate-Itemization of Prepaid Financed Charges which the plaintiffs received on or about December 22, 2003, included among the entries for which estimates are provided is a $75.00 for a courier/wire fee, $78.00 for a tax service fee and a settlement or closing fee of $350.00. According to the settlement statement prepared on the closing date of the loan, January 20, 2004, the plaintiffs were charged a settlement or closing fee of $300.00, a courier fee of $40.00 and $10.00 for a tax certification. Thus, we conclude that contrary to the

plaintiffs' assertion, these charges *were* all properly and accurately disclosed.

*5. Tolerance Level for Accuracy*

Under both the TILA, 15 U.S.C. §1605(f) and Regulation Z, 12 C.F.R. §226.23, there are certain levels of tolerance for small discrepancies in the disclosed finance charges. See, Stump, 2005 U.S. Dist. LEXIS at *22. Where, however, foreclosure proceedings have been instituted against the property secured by the loan, the tolerance level is somewhat more limited. In this regard, 12 C.F.R. §226.23(h)(2) provides:

> Tolerance for disclosures. After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:
>
> (I) is understated by no more than $35; or
>
> (ii) is greater than the amount required to be disclosed.

In adding up all of the estimated prepaid financed charges given on the December 22, 2003 disclosure we find that they total $7,789.20. In totaling the prepaid finance charges actually paid by the plaintiffs at the settlement, we find they equal $6,758.75. Thus, the amount estimated was greater than the amount required to be disclosed and we find that the $200 discrepancy in the appraisal fee falls within the threshold for tolerance prescribed by Regulation Z. We therefore find that

Deutsche Bank’s motion for summary judgment is properly granted in its entirety.

An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DAVIS and NICOLETTE LYNN DAVIS | : | CIVIL ACTION |
| vs. | : | NO. 05-CV-4061 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, NEW CENTURY MORTGAGE CORPORATION and NOVASTAR HOME MORTGAGE, INC. | : | |

**ORDER**

______AND NOW, this 7th day of November, 2007, upon consideration of the Motion of Defendant Deutsche Bank National Trust Company for Summary Judgment (Docket No. 29) and Plaintiffs' Response in Opposition thereto, (Docket No. 30), it is hereby ORDERED that the Motion is GRANTED and Judgment is hereby entered in favor of the Moving Defendant and against the Plaintiffs as a matter of law on all of the claims which Plaintiffs set forth against it pursuant to Fed.R.Civ.P. 56.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.